464 P.2d 1015

Irene Biehn **COLLIER** et al., Appellants,

v.

The **BOARD OF NATIONAL MISSIONS OF the PRESBYTERIAN CHURCH, UNITED STATES OF AMERICA**, a New York corporation; the Presbytery of Phoenix, an Arizona corporation; Biehn Colony Trust, Inc., an Arizona corporation, Appellees.

No. I CA–CIV 1064.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 16, 1970.

Tupper, Rapp & DeLeon, by Armando de León, Phoenix, for appellants.

Snell & Wilmer, by Thomas E. Parrish, Phoenix, for appellees.

JACOBSON, Judge.

The duties and powers of a trustee of a charitable trust where it has no detailed trust instrument under which to operate, is the primary issue raised on this appeal.

This present action arose out of a quiet title action and a resulting charitable trust as set forth in the opinion of this court in Olivas v. Board of National Missions of Presbyterian Church, 1 Ariz.App. 543, 405 P.2d 481 (1965).

In that opinion this court held that certain land consisting of approximately 100 acres located in the vicinity of the settlement of Guadalupe, Arizona, was the res of a charitable trust; that this property was held in trust for "the Yaqui Indians, Mexicans and other races which now occupy said property, and who are poor and are in need of land on which to reside;" and that the Presbytery of Phoenix, an agency of the Synod of Arizona of the Presbyterian Church of the United States, was the proper trustee of this property.

This court in Olivas adopted the following portion of the trial court's judgment:

"'As Trustee the Presbytery of Phoenix shall determine who may move on said property; may promulgate rules and regulations for the residents to abide by; may maintain a church on said property and shall allow within reason other churches on said property; and shall provide water and other utilities for said residents as the Trustees may deem necessary.'" I Ariz.App., at 545, 405 P.2d at 483.

Judge Donofrio, speaking for this court in Olivas, presented a detailed factual history of this land and the problems of the Yaqui Indians which need not be repeated here.

Following the *Olivas* decision, Biehn Colony Trust, Inc., a non-profit corporation, was formed by the Presbytery of Phoenix and the latter's duties as trustee were transferred to Biehn Colony Trust, Inc., with the approval of the trial court. No objection is made on this appeal to the substitution of Biehn Colony Trust, Inc., as trustee and we shall hereafter refer to it as "trustee."

Pursuant to the above-quoted directions of the trial court, the trustee filed a petition with the Superior Court of Maricopa County, seeking to confirm its authority to propose and implement certain plans dealing with the trust property. Appellants herein, who consist of several persons residing on the trust property,[1] appeared and contested the authority of the trustee to promulgate these plans and the propriety of the plans themselves. The trustee does not question the right of appellants, either here or in the trial court, to contest the trustee's authority, or to maintain this appeal.

Following the hearing on the trustee's petition, the trial court authorized the trustee to pursue the following course of conduct:

1. To execute a deed to the Presbytery of Phoenix for approximatey three acres of trust property to build a church and a public health clinic.

2. To execute a deed to the Tempe School District for the purposes of enlarging the present school site. (Both the deed to the Presbytery of Phoenix and the school district would contain reverter language so that in the event the property was no longer used for the purposes for which it was deeded, it would revert to the trustee.)

3. To impose reasonable deed restrictions on the trust property and to subdivide the same pursuant to a master plan designated as the Van Cleve report.

1. As to how many persons actually comprised the appellants, the record does not disclose, nor was counsel for the appellants able to enlighten the court as to their number. He indicated to the court that he represented the "resident beneficiaries" who desired his service. It appears however, that the appellants do not comprise a majority of the resident beneficiaries.

4. To undertake programs designed to increase the technical, managerial and entrepreneurial skills of the beneficiaries, subject to necessary monetary limitations of the trustee and appropriate public agencies.

5. To construct streets, parks, playgrounds, shopping areas, water and sewer lines, gas and electric lines, and other public utility services.

6. To construct buildings designed for recreational, educational, commercial or community purposes and to enter into leases for these purposes.

7. To encumber the trust property in order to finance the proposed improvements, provided that all encumbrances were to be subject to confirmation by the court.

8. To sell, lease or convey homesites to the resident beneficiaries, or to provide leasing of homes through arangements with the Maricopa County Housing Authority for residential purposes, provided that all sales or leases were subject to confirmation by the court.

9. To provide facilities for job training institutions, including construction of classrooms, laboratories, workshops, offices and residences for persons enrolled in job training programs.

All of the authority of the trustee was subject to the limitation that upgrading of homes would be on a purely voluntary basis on the part of the resident beneficiaries; that no person presently residing on the trust property would be deprived of a home or a homesite by virtue of the development; and that no beneficiary would involuntarily incur any expense if requested by the trustee to move to a different homesite.

The appellants raised several questions on appeal which as viewed by this court resolve themselves into two basic issues:

(1) Whether the resident beneficiaries received adequate notice of the hearing on the trustee's petition, and

(2) Whether the trustee has authority under this charitable trust to carry out its proposed plan.

As to the first issue raised by the appellants, the record reflects that the trustee filed its petition for Confirmation of Authority on June 27, 1968. On that date, a hearing on the petition was set for July 11, 1968, and the trial court authorized the trustee to give notice of the hearing in the following manner:

(1) By posting copies of the order and notice in both English and Spanish at three different locations on the trust property;

(2) By posting copies of the order and notice in both English and Spanish on the premises of the Guadalupe Organization, 8810 South 56th Street, Guadalupe (Tempe), Arizona; and

(3) By publication of the order and notice in English and Spanish on one occasion in the Tempe Daily News, a newspaper of general circulation in Maricopa County.

The record discloses that the Trustee's Board of Directors consists of fourteen members, seven of whom are from the community of Guadalupe and two of these seven reside on the trust property. Prior to filing its petition for confirmation of authority, the trustee had interviewed numerous residents of the trust property concerning its proposed program, held a general meeting of the whole community to discuss the proposed plan, and had private meetings with various families and individuals living on the trust property concerning the program outlined by the trustee.

At the time set for the hearing, counsel for the appellants appeared and the trustee presented its case in chief. Counsel for the appellants requested and was granted a continuance to conduct cross examination of the trustee's witnesses and to present any evidence on behalf of appellants. The court asked counsel for the appellants whether July 30, 1968 was a satisfactory date for this purpose. Counsel indicated his acceptance of this date. There were no motions or other responsive pleadings filed in the trial court raising the issue of insufficiency of the notice of the hearing.

In such a case, this court would ordinarily not consider any issue on appeal

which had not been raised in the trial court. Evans v. Lundgren, 11 Ariz.App. 441, 465 P.2d 380 (Filed Feb. 11 1970). However, in view of the claim of appellants that a constitutional due process right has been violated by reason of insufficiency of notice of the hearing, we prefer to dispose of this issue on its merits.

The appellants have cited several cases to this court dealing with notice to beneficiaries of *private* trusts including Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). However, appellants have failed to cite any cases to the court on the sufficiency of notice or the necessity of notice to beneficiaries of a *charitable* trust. In most states, and at common law, the Attorney General is the proper party to enforce the provisions of a charitable trust, Ireland v. Jacobs, 114 Colo. 168, 163 P.2d 203, 161 A.L.R. 1413 (1945); Longcor v. City of Red Wing, 206 Minn. 627, 289 N.W. 570 (1940); G. Bogert, Trusts and Trustees, Sec. 411 (2d ed. 1964), and to participate in a suit for construction of a charitable trust. Krauthoff v. Attorney General, 240 Mass. 88, 132 N.E. 865 (1921).

Also, at common law the potential beneficiaries of a charitable trust have no standing to enforce, construe, or require an accounting of the trust or trust property. Averill v. Lewis, 106 Conn. 582, 138 A. 815 (1927); Association for Relief of Respectable, Aged, Indigent Females in City of New York v. Beekman, 21 Barb. 565 (N.Y. 1854); Krauthoff v. Attorney General, supra. While there are exceptions to these rules dealing with special interests held by particular beneficiaries, cf. Harger v. Barrett, 319 Mo. 633, 5 S.W.2d 1100 (1928); Harris v. Brown, 124 Ga. 310, 52 S.E. 610, 2 L.R.A.,N.S., 828 (1906), appellants do not point out to the court that they fall into these exceptions.

These issues, that is, whether the Attorney General in Arizona would be a proper party in this action, cf. Smith v. Superior Court, 101 Ariz. 559, 422 P.2d 123 (1967), (See also A.R.S. sec. 14–642 (Supp.1969–70)), and whether the appellants would have any standing initially to protest the trustee's authority, are not before us and we specifically make no decisions as to these issues. However, the fact that these issues could be raised points out that what may violate due process as regards notice to definite beneficiaries of a *private* trust would not necessarily violate due process as regards notice to indefinite beneficiaries of a *charitable* trust.

■ We therefore hold that, in view of the activities of the trustee prior to the hearing and in view of the method employed in giving notice of the hearing in this case, due process was not violated, and this notice was adequate to bring before the court persons of sufficient divergent views to allow the court to intelligently exercise its authority to supervise and control the trust, and to prevent the misuse or abuse of the trust property; cf. Lowell v. Lowell, 29 Ariz. 138, 240 P. 280 (1925).

■ We now turn to the contention that the trustee has no authority to carry out or implement the program approved by the trial court. It is the general rule that a trustee of a charitable trust has whatever authority is necessary to carry out the intention of the trustor in creating the charitable trust. Galiger v. Armstrong, 114 Colo. 397, 165 P.2d 1019 (1946). It would appear from the record and transcript that the trustee has expended a good deal of time, money and thought for the purpose of bringing to fruition a plan which would assure that the resident beneficiaries would not only receive adequate homesites but also that their standard of living would be elevated. In general, we find that the plan of the trustee is within the scope of the intent of the original trustor, Mrs. Jenny Adamson Biehn, as expressed in Olivas v. Board of National Missions of Presbyterian Church, supra, and therefore a valid exercise of the trustee's authority. Restatement (Second) of Trusts, sec. 380 (1959).

We note with approval that the plan is for the most part a voluntary one and that all matters affecting the title to the res

property is subject to confirmation by the trial court. In this regard we caution both the trustee and the trial court to keep in mind the intention of the original trustor that this land be used as "homesites" for all the trust beneficiaries. Therefore, the reasonable safeguards set forth in the plan should be scrupulously observed to assure that over-extension of the material means of the beneficiaries or of the trustee does not result in this land being placed in the hands of strangers by reason of foreclosure or otherwise.

The appellants also contend that implementation of this plan would result in the violation of their "civil rights." While Appellants' Brief is not too clear as to just what "civil rights" of appellants are involved, it appears that the essence of their argument is that appellants have legal title to, or a property right in, the homesites now occupied by them and that any interference on the part of the trustee with the occupation of the homesites constitutes a violation of their "civil rights." The property rights in the land here involved have previously been adjudicated in *Olivas*, with title being quieted in the trustee. This question cannot be relitigated here. Apparently appellants also contend that their "civil rights" are violated by the plan not adequately providing for relocation of any displaced beneficiaries. At this point in the proceedings, this argument is premature. As we have previously stated herein, the proposed plan is a valid exercise of the trustee's power. If, in the implementation of the plan, the trustee violates its commitments set forth therein, then any such violation may be brought to the court's attention for appropriate redress.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.