91 P.3d 1019

ROBERT SCHALKENBACH FOUNDATION; Stanley Sapiro; E.C. Redepenning; Carol Mauch; Elaine Coons; Wayne Wuertz; Common Ground–USA, Center for the Study of Economics; Henry George Foundation of America; Henry George School of Social Science of Los Angeles; Henry George School of Northern California; Tax Reform Australia, Inc.; The Association for Good Government; The Henry George Foundation Ltd. of New South Wales; The Danish Henry George Society; Resource Rentals for Revenue Association; South African Constitutional Property Rights Trust; Canadian Henry George School of Economic Science and Social Philosophy; Geonomy Society; International Union for Land Value Taxation and Free Trade; and The Henry George Institute, Petitioners–Appellants,

v.

LINCOLN FOUNDATION, INC.; Lincoln Institute of Land Policy, Inc.; David C. Lincoln; Kathryn Lincoln; John G. Lincoln, III; Lillian Lincoln Howell; Ronald Smith; H. James Brown; Karl W. Case; David E. Dowall; Richard A. Kahan; Wallace E. Oates; Carolina Barco de Botero; Jean Hocker; Therese J. McGuire; Evelyn Lord; Lester Simon; David R. Fullmer; Gary Cornia; Earl Blumenaur; Arizona Attorney General, Respondents–Appellees.

The Henry George School of Social Science, New York, New York, Petitioner–Appellant,

v.

Lincoln Foundation, Inc. and The Lincoln Institute of Land Policy, Inc., Respondents–Appellees.

Nos. 1 CA–CV 02–0208, 1 CA–CV 02–0780.

Court of Appeals of Arizona, Division 1, Department B.

June 17, 2004.

As Amended July 9, 2004.

178

Brooks & Affiliates, P.L.C. by David P. Brooks, Mesa, and Christopher J. Raboin, Phoenix, Co–Counsel for Petitioners–Appellants.

Snell & Wilmer, L.L.P., Patricia Lee Refo, Robert M.J. Kort, Phoenix, Attorneys for Respondent–Appellee Lincoln Foundation, Inc.

Meyer, Hendricks & Bivens, P.A., Donald W. Bivens, Ed Henricks, Jr., Phoenix, Attorney for Respondent–Appellee Lincoln Institute of Land Policy.

Terry Goddard, Attorney General by Kathryn L. Leonard, Assistant Attorney General, Consumer Protection and Advocacy Section, Phoenix, Attorney for Respondents–Appellees State of Arizona.

**OPINION**

KESSLER, Judge.

¶ 1 In this consolidated appeal, Appellants Robert Schalkenbach Foundation, Inc., *et al.* (the "Schalkenbach Appellants") and the Henry George School of Social Science, New York, New York (the "New York School") (collectively, "Appellants") assert that two probate judges erred by dismissing their petitions for failure to state a claim upon which relief can be granted. Specifically, Appellants take issue with the probate judges' decisions to: (1) dismiss their complaints for lack of standing to enforce a charitable trust; and (2) refuse to grant their writ of mandamus to compel the Attorney General to enforce a charitable trust or, in the alternative, to designate them as relators to act on behalf of the Attorney General. Adopting the "special interest" test for standing, we uphold the probate courts' decisions.

### *Factual and Procedural History*

*CV 1999–016329*

¶ 2 The Schalkenbach Appellants filed a complaint in a prior case in 1999 to: (1) compel the Lincoln Foundation, Inc. (the "Foundation") to honor the charitable trust under which it holds assets and to abide by its Articles of Incorporation; (2) replace the Foundation's officers and directors with persons interested in carrying out the terms of the charitable trust; and (3) require the reimbursement of improper expenditures made by the Foundation (hereafter, "CV 1999–016329").

¶ 3 The Schalkenbach Appellants asserted that the Foundation is a charitable trust that was founded, organized and funded by John C. Lincoln for the purpose of teaching, expounding and propagating the ideas of Henry George.[1] The Schalkenbach Appellants iden-

---

1. Henry George was a nineteenth century American economist and social philosopher who propounded a "Single Tax" theory that proposes that all taxes be abolished except a tax on the community-produced ground rent of land. In his book, PROGRESS AND POVERTY 362–64 (1879), George wrote:

    We should satisfy the law of justice, we should meet all economic requirements, by at

one stroke abolishing all private titles, declaring all land public property, and letting it out to the highest bidders in lots to suit, under such conditions as would sacredly guard the private right to improvements.

    But such a plan, though perfectly feasible, does not seem to me the best.... To do that would involve a needless shock to present customs and habits of thought—which is to be

tified themselves as longtime supporters of the ideas of Henry George or nonprofit associations and corporations organized to teach and expound the ideas of Henry George.[2]

¶ 4 The Schalkenbach Appellants alleged that: the Foundation improperly paid money to entities that did not follow the trust's purpose; the Foundation created the Lincoln Institute of Land Policy (the "Institute") and improperly transferred money to the Institute; and the Foundation's officers and directors did not accept the teachings of Henry George.

¶ 5 The Foundation moved to dismiss the complaint under Arizona Rule of Civil Procedure 12(b)(6) claiming, in part, that the Schalkenbach Appellants lacked standing under both the Arizona Nonprofit Corporations Act and the common law of trusts and that their claims were time barred. The court dismissed the Schalkenbach Appellants' complaint without prejudice after finding that the Schalkenbach Appellants did not have a "special interest" in the charitable trust and, therefore, they were unable to enforce the trust under the common law.

¶ 6 The Schalkenbach Appellants moved to amend their complaint to add the Attorney General as a defendant and to compel the Attorney General to enforce the trust, or to appoint the Schalkenbach Appellants as relators to enforce the trust on the Attorney General's behalf. The trial court refused to grant the amendment, stating it would be futile. The trial court entered another order, again dismissing the complaint without prejudice. The Schalkenbach Appellants did not appeal from any of the above orders.

*PB 2001–01733*

¶ 7 Instead, in 2001, the Schalkenbach Appellants filed a petition in probate court, which is the subject of this consolidated appeal, (hereafter, "PB 2001–01733") to enforce the public charitable trust established by the will (the "Petition"). In the Petition, the Schalkenbach Appellants alleged almost identical facts and legal theories as those set forth in their 1999 complaint with two pertinent differences. The Petition: (1) named the Attorney General as a defendant and requested a writ of mandamus to require the Attorney General to enforce the trust or allow the Schalkenbach Appellants to be designated relators to act on the Attorney General's behalf; and (2) referred to John C. Lincoln's will[3] and claimed the probate court could proceed pursuant to Arizona Revised Statutes ("A.R.S.") §§ 14–7201, –1401 (1995).

¶ 8 The Foundation and the Attorney General moved to dismiss the Petition on the grounds of issue preclusion/res judicata, lack of standing, and failure to state a claim upon which relief could be granted.[4]

¶ 9 The probate court dismissed the petition without prejudice. The court found that in CV 1999–016329 the trial court had already determined that the Schalkenbach Appellants lacked standing to enforce the charitable trust and, therefore, issue preclusion barred the Schalkenbach Appellants from again raising this issue in PB 2001–01733. The court noted that while the existence of the will might support the existence of such a trust, this was unimportant to the trial court's ruling in CV 1999–016329 and, therefore, did not undermine the validity of the prior ruling.

avoided. To do that would involve a needless extension of governmental machinery—which is to be avoided.

I do not propose either the purchase of or to confiscate private property in land. The first would be unjust; the second, needless. Let the individuals who now hold it still retain, if they want to, possession of what they are pleased to call their land. Let them continue to call it their land. Let them buy and sell, and bequeath and devise it. . . . It is not necessary to confiscate land; it is only necessary to confiscate rent.

2. The Schalkenbach Appellants include individuals, associations and organizations located around the world.

3. At some time during the prior civil proceeding, the Schalkenbach Appellants unsuccessfully offered to introduce the will into the proceedings.

4. While the pleadings for the motion to dismiss were pending, the Schalkenbach Appellants also moved to join the New York School as an additional co-petitioner, which was successfully opposed by the Foundation and the Attorney General.

¶ 10 The probate court also found that the Schalkenbach Appellants lacked standing under A.R.S. § 14–7201 because they were not interested parties. The court did not hold that the writ of mandamus and relator issues were precluded by res judicata, but adopted the reasoning of the trial court in CV 1999–016329 to find that these claims against the Attorney General should be dismissed for failure to state a claim upon which relief could be granted. Ultimately, the court dismissed the Schalkenbach's Petition without prejudice.

*PB 2002–000810*

¶ 11 In 2002, the New York School filed its probate court petition (the "New York School Petition"), which is also the subject of this consolidated appeal, to enforce the charitable trust established through John C. Lincoln's will (hereafter "PB 2002–000810"). The New York School Petition set forth essentially the same allegations as the Schalkenbach Petition in PB 2001–01733, except it asserted that, as a nonprofit organization that is dedicated to the teachings of Henry George, it had received substantial assistance from the Foundation from the 1950s through the 1970s and it had been a named beneficiary in the Foundation's Articles of Incorporation from 1969 until 1992.

¶ 12 The Foundation moved to dismiss the New York School's Petition for failure to state a claim. The probate court granted that motion and dismissed the New York School's Petition without prejudice.

¶ 13 The Schalkenbach Appellants timely filed their appeal in PB 2001–001733 and it was docketed as our case 1 CA–CV 02–0208. New York School timely filed its appeal in PB 2002–00810 and it was docketed as our case 1 CA–CV 02–0780. This Court consolidated the two appeals. Despite both orders of dismissal being without prejudice, we have jurisdiction pursuant to Arizona Constitution, Article VI, Section 9 and A.R.S. § 12–2101(D) (2003); *State v. Boehringer*, 16 Ariz.

48, 51–52, 141 P. 126, 127 (1914); *Flynn v. Johnson*, 3 Ariz.App. 369, 373, 414 P.2d 757, 761 (1966).

¶ 14 Collectively, Appellants assert the probate court erred by dismissing their petitions because they had standing to enforce the charitable trust under A.R.S. §§ 14–7201 and 12–2021, and under common law. The Schalkenbach Appellants also assert that they should be allowed to proceed against the Attorney General. The Foundation and the Attorney General assert that the probate judges' decisions dismissing the petitions should be upheld.

### Appellants Lack Standing to Enforce the Trust

■ ¶ 15 Whether a party has standing to sue is a question of law we review *de novo*. *Alliance Marana v. Groseclose*, 191 Ariz. 287, 289, 955 P.2d 43, 45 (App.1997).

### A. Issue Preclusion Bars The Schalkenbach Appellants from Relitigating Their Standing to Bring Common Law Claims to Enforce the Charitable Trust.

■ ¶ 16 The probate court held that the Schalkenbach Appellants were barred by issue preclusion from re-litigating whether they had common-law standing to enforce the charitable trust. We affirm that holding on three separate grounds.

■ ¶ 17 First, the Schalkenbach Appellants did not challenge that holding in their opening brief. Generally, we will consider an issue not raised in an appellant's opening brief as abandoned or conceded. *DeElena v. Southern Pac. Co.*, 121 Ariz. 563, 572, 592 P.2d 759, 768 (1979); *State Farm Mut. Auto. Ins. Co. v. Tarantino*, 114 Ariz. 420, 422, 561 P.2d 744, 746 (1977); *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 581 n. 1, 20 P.3d 1158, 1162 (App.2001).[5]

■ ¶ 18 Second, even if this issue was not abandoned, the trial court correctly decided

5. In their reply brief, the Schalkenbach Appellants addressed an argument regarding preclusion raised in the Foundation's answering brief. Even if this were sufficient to preserve the standing issue, the Schalkenbach Appellants only addressed whether issue preclusion would bar their claims under the probate code or for mandamus relief, not their common-law standing to enforce the trust.

the preclusion issue. For issue preclusion to apply:

> (1) the issue must have been actually litigated in a previous proceeding, (2) the parties must have had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits must have been entered, (4) resolution of the issue must be essential to the decision, and (5) there must be common identity of the parties.

*Garcia v. General Motors Corp.*, 195 Ariz. 510, 514, ¶ 9, 990 P.2d 1069, 1073 (App.2000); *see also Chaney v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986).

¶ 19 The issue of whether the Schalkenbach Appellants had common-law standing to enforce the charitable trust was fully briefed and argued in CV 1999–016329. In that case, the trial court held that they did not have a "special interest" in the trust and, therefore, were not the appropriate parties to enforce the trust.

¶ 20 On the facts here, the trial court's dismissal of the complaint in CV 1999–016329 is a final judgment for purposes of issue preclusion. A ruling that plaintiff lacked standing to proceed was essential to the dismissal of that case. This is true even though there was not an "on the merits" determination of the underlying issue. Also, even though the complaint was dismissed "without prejudice," the court denied the Schalkenbach Appellants' motion for leave to amend. Under such circumstances, an issue may be considered to have been litigated to finality between the parties for purposes of issue preclusion. *See Flynn*, 3 Ariz.App. at 373, 414 P.2d at 761 ("an order granting a motion to dismiss would be appealable if it was entered without leave to amend or with prejudice"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) ("an issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties"); *Offshore Sportswear, Inc. v. Vuarnet, Int'l*, 114 F.3d 848, 850 (9th Cir. 1997) (dismissal without prejudice based on a forum selection clause was "a determination on the merits of the applicability, and enforceability, of the clause itself" and "[i]f the order becomes final (as will happen if it is left unappealed), it is preclusive when the issues and the parties remain the same"). Even if the prior decision is not considered appealable, the parties may be precluded from relitigating the issue again where the decision was sufficiently firm to be accorded conclusive effect, meets the other requirements for preclusion, and could have been reviewed by special action. *Elia v. Pifer*, 194 Ariz. 74, 80, ¶ 33, 977 P.2d 796, 802 (App. 1998); Restatement (Second) of Judgments §§ 13 cmt. g and 28(1), cmt. a (1982).

¶ 21 Third, as discussed below, even if the probate court had reached the merits of the Schalkenbach Appellants' common-law standing to enforce the trust, they, like the New York School, do not have such standing. We will affirm a trial court's decision if it is correct for the wrong reason. *In re Estate of Fogleman*, 197 Ariz. 252, 260, ¶ 24, 3 P.3d 1172, 1180 (App.2000).

## B. Appellants Do Not Have Common–Law Standing to Enforce the Charitable Trust.

¶ 22 Neither the parties' briefs nor our independent research has discovered any reported Arizona appellate decision explaining which private parties have common-law standing to enforce a charitable trust. In *Collier v. Board of Nat'l Missions of the Presbyterian Church*, 11 Ariz.App. 428, 431, 464 P.2d 1015, 1018 (1970), this Court stated that "potential beneficiaries of a charitable trust have no standing to enforce, construe, or require an accounting of the trust or trust property" but that rule is subject to exceptions "dealing with special interests held by particular beneficiaries." However, the *Collier* court expressly stated the standing issue was not before it, thus the above language is dicta. Moreover, the *Collier* court did not discuss what the term "special interests" meant.

¶ 23 Relying on treatises and decisions from other jurisdictions, we hold that to have such common-law standing, a party must show that they have a special interest in the trust, such as being a current beneficiary, and not merely being a potential or prior beneficiary of a large class of potential bene-

ficiaries. As discussed in relation to Appellants' claim that they had standing under the Probate Code, our conclusion finds further support in the legislature's stated intent to use common-law principles to determine standing to enforce trusts under that code.

¶ 24 The "special interest" test is the current, common-law[6] view of standing to enforce charitable trusts, adopted by the Restatement Second of Trusts ("Restatement"), leading commentators and other state courts. We turn first to the Restatement for guidance. Section 391 of the Restatement provides:

> A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, or by a co-trustee, or by a person who has a special interest in the enforcement of the charitable trust, but not by persons who have no special interest or by the settlor or his heirs, personal representatives or next of kin.

As explained by comment c to § 291, potential beneficiaries of a large or undefined class do not have a special interest sufficient to endow them with standing to enforce the trust:

> **The mere fact that a person is a possible beneficiary is not sufficient to entitle him to maintain a suit for the enforcement of a charitable trust** ... [w]here a charitable trust is created for the relief of poverty or the promotion of education, it may be provided that particular persons shall be entitled to a preference in receiving benefits.... In such a case any such person can maintain a suit against the trustees for the enforcement of the trust .... **[w]here a charitable trust is created for the members of a small class of persons, a member of the class can maintain a suit ... for the enforcement of the trust.**

(Emphasis added.) *See also* Restatement § 391, cmt. d ("A suit for the enforcement of a charitable trust cannot be maintained by persons who have no special interest in the enforcement of the trust.").

¶ 25 Most commentators' thinking is consistent with the Restatement, limiting standing of private persons who are not named beneficiaries or trustees to persons with special interests in the trust. *See* William F. Fratcher, *IV A Scott On Trusts* § 391 (1989) (persons who have special interest in performance of charitable trust can maintain action for its enforcement). As one leading treatise has explained:

> **As a general rule no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited [sic] by the trust and will received charitable or other benefits from the operation of the trust.** The courts usually require that suits for enforcement be brought by the established representative of the charity, [or] the Attorney General ... Nevertheless, in a fairly large group of cases the **courts have permitted private individuals, whose positions with regard to the charitable trust were more or less fixed, to sue for its enforcement. These decisions have been regarded in the past as exceptional and dependent in large part on special circumstances showing that the plaintiff was certain to receive trust benefits,** or on lack of opposition to the capacity of the complainant.

George Gleason Bogert, *The Law of Trusts and Trustees* § 414 (Rev.2d ed. Supp 2003) (hereafter, "Bogert") (emphasis added.)

¶ 26 The policy behind limiting enforcement of charitable trusts to public officers and persons with a special interest "stems from the inherent impossibility of establish-

---

**6.** Historically, once courts began to look with favor on charitable trusts, they relied upon state attorneys general to enforce the terms of the trust. David Villar Patton, *The Queen, The Attorney General, and the Modern Charitable Fiduciary: A Historical Perspective on Charitable Enforcement Reform*, 11 U.Fla. J.L. & Pub. Policy 131, 159–61 (Spring 2000), citing to *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat) 518, 4 L.Ed. 629 (1819); Mary Grace

Blasko, Curt S. Crossley, David Lloyd, *Standing to Sue in the Charitable Sector*, 28 U.S.F.L.Rev. 37, 41–47 (Fall 1993) (hereafter, "Blasko"). Later, recognizing the limitations on state attorney general enforcement of such trusts, courts began to expand the standing concept, allowing private persons to bring relator actions, analogizing to corporate law and derivative suits and ultimately developing a "special interest" test. Blasko at 49–82.

ing a distinct justiciable interest on the part of a member of a large and constantly shifting benefitted class, and the recurring burdens on the trust res and trustee of vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust." *Hooker v. Edes Home*, 579 A.2d 608, 612 (D.C.App.1990); Bogert, § 414; Blasko at 52.

¶ 27 While the term "special interest" is not defined and must be determined on the facts of each case, we conclude that a modified version of the five-factor balancing test described by Blasko is consistent with the above treatises. It makes the most sense in giving meaning to "special interest," while also best serving the policies underlying limiting standing in enforcing charitable trusts. Those five factors are: (1) the nature of the benefitted class and its relationship to the charity; (2) the extraordinary nature of the acts complained of and the remedy sought; (3) the state attorney general's availability or effectiveness to enforce the trust; (4) the presence of fraud or misconduct on the part of the defendants; and (5) subjective and case-specific circumstances. Blasko at 61–82. However, we give special emphasis to several of those factors—the nature of the benefitted class and its relationship to the trust, the nature of the remedy requested, and the effectiveness of attorney general enforcement of the trust.[7]

¶ 28 None of the factors support a finding that the Schalkenbach Appellants have standing. First, there is no "sharply defined" or "small class" of potential beneficiaries. Consistent with the above treatises, some jurisdictions have recognized standing for such a small group of potential beneficiaries, but only if the class is small and distinct

enough to prevent the trustees from being subjected to "recurring vexatious litigation." *Hooker*, 579 A.2d at 612; *Kania v. Chatham*, 297 N.C. 290, 254 S.E.2d 528, 530 (1979) (refusing to grant standing to an unsuccessful nominee of a scholarship funded by a charitable trust because granting standing "would only open the door to similar actions by [hundreds] of other unsuccessful nominees now and in the future"); *Williams v. Board of Trustees of Mount Jezreel Baptist Church*, 589 A.2d 901, 909 (D.C.App.1991) (refusing to grant standing to a group that would be "uncertain and limitless"); *Pollock v. Peterson*, 271 A.2d 45, 49 (Del.Ch.1970) (adjoining landowners who objected to the proposed use of a trust's real estate lacked standing to sue for their own special interest); *Warren v. Board of Regents*, 247 Ga. App. 758, 544 S.E.2d 190, 194 (2001) (faculty members who objected to university's selection of person to assume endowed chair lacked standing by virtue of their positions as faculty members eligible to be selected for the chair).

¶ 29 Examples of small, sharply defined classes of plaintiffs include: (1) female, indigent, aged widows who are in good health and residents of a city where the trust was established for their specific care;[8] (2) employees of a founder's corporation and their families;[9] and (3) residents of a township.[10] What can be considered to be a small, sharply defined class can differ widely.

¶ 30 More important than numbers of class members is the manageability of the size of the class, whether it can be easily entered, and whether the plaintiff established that it has a direct interest in the operation of the trust. For example, other jurisdictions have found a class of students or faculty who could possibly receive a scholarship or be selected

---

7. We give little, if any, weight to the nature of the acts complained of and whether there are any allegations of fraud because any plaintiff can allege such misconduct, regardless of the merits of the complaint. If we found that mere allegations of grave misconduct were sufficient to confer standing, the purposes of limiting standing to protect trustees from vexatious litigation would be undermined. Where there are such allegations, we presume that the availability of Attorney General enforcement will suffice to remedy any alleged misconduct.

8. *Hooker*, 579 A.2d at 615.

9. *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 490 N.Y.S.2d 116, 479 N.E.2d 752, 756 (App.1985)

10. *Township of Cinnaminson v. First Camden Nat'l Bank and Trust, Co.*, 99 N.J.Super. 115, 238 A.2d 701, 707–708 (1968).

to an endowed chair to be too large and remote to be a group with a special interest. *Kania,* 254 S.E.2d at 530; *Warren,* 544 S.E.2d at 194. *See also* Blasko at 67–69.

¶ 31 Applying these concepts to the Appellants, the Schalkenbach Appellants lack standing to enforce the trust. These Appellants have not shown any "special interest" in the trust except as potential beneficiaries. As noted above, that is insufficient. Restatement § 391 cmts. c and d; Bogert, § 414.

¶ 32 The New York School presents a closer case because it was once a beneficiary and was listed in the Foundation's Articles as a beneficiary. Thus, it can contend it has some prior relationship with the Foundation. However, that "special interest" ended over 10 years ago, making the New York School just another potential beneficiary of the trust. It fails to demonstrate that it is a part of a small and distinct class of potential beneficiaries who, if allowed to have standing, would not subject the Foundation to recurring vexatious litigation.[11] As such, the New York School is not an entity whose position with regard to the trust is more or less fixed so that it can be said to be certain to receive trust benefits. Bogert, § 414. *Compare Albert B. Clement Trust v. Vos,* 679 N.W.2d 31, 38 (Iowa 2004) (nonprofit corporation for which trust had agreed to help fund citizen center had standing to challenge trust's decision to revoke funding, but lacked standing to challenge administration of trust and trust's decision to build a separate community center in town).

¶ 33 Relying on *St. John's–St. Luke Evangelical Church v. Nat'l Bank of Detroit,* 92 Mich.App. 1, 283 N.W.2d 852 (1979), the New York School asserts that it has a special interest because it has a history with the Foundation. The New York School points out that it received substantial assistance from the Foundation in the 1950s through the 1970s and it was a named beneficiary in

the Foundation's Articles of Incorporation from 1969 until 1992. However, the facts in *St. John's* differ from the ones presented here.

¶ 34 In *St. John's,* the original trust instrument named St. John's Church as a beneficiary of 10% of the trust income, but gave the trustee uncontrolled discretion of all distributions. *Id.* at 853–55. St. John's Church brought suit after the trustee relied on its discretionary power to stop making payments to St. John's Church. *Id.* Here, the original trust instrument did not name the New York School as a beneficiary that was to receive a distribution from the Foundation. The New York School was added as a possible beneficiary decades after the charitable trust was established and no designated distribution was ever afforded. Moreover, although the New York School received distributions from the Foundation, it has not received a distribution for over 20 years. *St. Johns* simply does not support the contention that a former named possible beneficiary that has not received distributions in over 20 years has a special interest in enforcing the trust.

¶ 35 Not only must we examine the size and relationship of the class to determine if Appellants have a "special interest," but we must also look at other factors that could leave the Foundation open to vexatious litigation. One such factor is whether the actions concern the ongoing administration of the Foundation, or whether the Appellants are claiming that the Foundation has taken an extraordinary action that would affect the Appellants' interest. *See Alco Gravure,* 490 N.Y.S.2d 116, 479 N.E.2d at 756. New York School claims that the Foundation has been systematically diverting funds from their approved purpose to improper uses.[12] The allegation that the Foundation has been systematically diverting funds implies that the New York School wishes to influence the

---

**11.** The Appellants do not set forth how many people may be followers of Henry George, how easy or difficult it may be to become a follower of Henry George, or how they are directly affected by the Foundation's actions.

**12.** Specifically, the New York School asserts the Foundation improperly paid money to entities

that did not follow the purpose of the charitable trust; the Foundation created the Institute and improperly transferred money to the Institute because it did not follow the purpose of the charitable trust; and the officers and directors of the Foundation renounced the teachings of Henry George.

daily operations of the Foundation. The New York School claims that the outcome of this systemic diversion is that all funds are being diverted for improper purposes. Ultimately, the remedies that the Appellants wish to impose are highly intrusive in the administration of the trust,[13] which could open the Foundation to further litigation by other potential or disappointed beneficiaries.

¶ 36 Another factor is whether the Attorney General's Office would be able to enforce the trust if it concluded that Arizona citizens were being harmed by the Foundation's alleged breach, or whether the lack of enforcement by the Attorney General is due to a conflict of interest, ineffectiveness, or lack of resources. Blasko at 67–69. Neither the Schalkenbach Appellants nor the New York School points to any evidence that the Attorney General's refusal to act to enforce the trust is due to a conflict of interest or ineffectiveness. At oral argument, the Office of the Attorney General stated that its decision to not enforce this trust was not influenced by lack of resources. While the Office of the Attorney General cannot be expected to enforce any and all violations of charitable trusts, no matter how trivial, we do not see evidence of neglect of the public interest in this case.

¶ 37 In conclusion, we hold that all of the primary factors to determine "special interest" standing weigh against holding Appellants have such standing. The weight of these factors removes any need for us to evaluate other, secondary factors to determine standing. Accordingly, we will not reverse the probate courts' decisions on this issue.

## C. Appellants Do Not Have Standing to Enforce the Charitable Trust Under the Probate Code.

¶ 38 Appellants also contend that they have standing under the probate code to seek to enforce John C. Lincoln's will. Given both prior case law and the legislature's stated intent to apply common law principles to determine standing under the code, we hold Appellants lack such standing.

¶ 39 The probate code that was in effect at the time the probate judges dismissed Ap-

pellants' petitions did not specifically address charitable trusts or enforcement of charitable trusts. Section 14–7201 provides that the probate court has jurisdiction over "proceedings initiated by interested parties concerning the internal affairs of trusts". Construing this general reference to "trusts" to include "charitable trusts," Appellants had to establish that they are "interested parties" to have standing to enforce a charitable trust.

¶ 40 The definition of "interested persons" for Title 14 is found in A.R.S. § 14–1201. *In re Hayes,* 129 Ariz. 174, 176, 629 P.2d 1010, 1012 (App.1981) (applying the definition of "interested persons" to determine if a person was an "interested party" under A.R.S. § 14–7201).

> "Interested person" includes any heir, devisee, child, spouse, creditor, beneficiary and other person *who has a property right in or claim against a trust estate* or the estate of a decedent, ward or protected person. Interested person also includes a person who has priority for appointment of personal representative and other fiduciaries representing interested persons. *Interested person, as the term relates to particular persons, may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.*

A.R.S. § 14–1201(26) (emphasis added).

¶ 41 Appellants have no property right in or a claim against the trust estate. A.R.S. § 14–1201(26). *See generally In re Hayes,* 129 Ariz. at 175, 629 P.2d at 1011 (in the context of a private trust, the court analyzed whether the trustor demonstrated an intention to give beneficial interest). Therefore, the issue is whether, in light of the "particular purposes of, and matter involved in" the probate proceeding, may Appellants be considered interested persons? A.R.S. § 14–1201(26).

¶ 42 While § 14–1201(26) does not provide further guidance as to standing, other statutes are instructive on the issue. The Arizona Legislature enacted the Revised

---

13. Appellants seek to have a court order: the Foundation to comply with the terms of the trust; removal of the Foundation as the trustee and appointment of a new trustee that would fulfill

John C. Lincoln's intent; removal of one or more of the Foundation's directors and appointment of new directors that would fulfill John C. Lincoln's intent.

Uniform Trust Code ("RUTC"), effective January 1, 2004. *See* Session Laws 2003, Ch. 212, § 13.[14] The RUTC provides guidance as to the definition of and the proper parties to enforce a charitable trust. Section 14–10405(C) provides that "[t]he settlor of a charitable trust, among others, may maintain a proceeding to enforce the trust." More importantly, the RUTC also provides that "[t]he common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or another statute of this state." A.R.S. § 14–10106. We may look to the RUTC to analyze how the purposed legislation sheds light on the purpose of the laws in place at the time the judgments were rendered. *Weekly v. City of Mesa*, 181 Ariz. 159, 163, 888 P.2d 1346, 1350 (App.1994).

¶ 43 Appellants argue for a "flexible" interpretation of "interested parties" to satisfy the legislative purpose of the probate code, which is "[t]o discover and make effective the intent of a decedent in distribution of his property" and to "facilitate use and enforcement of certain trusts." A.R.S. § 14–1102(A), (B)(2) and (4).[15] Appellants also

urge us to apply a common-law "special interest" analysis to determine if they are "interested persons."

¶ 44 Given that the use of common-law principles are helpful in determining standing as an "interested party" under the probate code, we do so here. Under the common-law special interest test analyzed above, we hold Appellants lack standing to enforce the charitable trust under the probate code.

¶ 45 Our application of the special interest test in interpreting the probate code standard is supported by California, to which we look to interpret our probate code. *In re Rose's Estate*, 15 Ariz.App. 73, 75, 485 P.2d 1190, 1192 (1971), *vacated on other grounds*, 108 Ariz. 101, 493 P.2d 112 (1972). California has similar statutory language that defines "interested person." *See* California Probate Code § 48.[16] The code has been interpreted to give a probate judge a "nonexclusive list or recognizable interests," while also requiring the judge "to evaluate underlying policy considerations regarding specific probate proceedings." *Arman v. Bank of Am.*, 74 Cal.App.4th 697, 702, 88 Cal.Rptr.2d 410 (Cal.Ct.App.1999). California has adopted

---

14. In its Second Special Session of 2003, the Arizona Legislature adopted H.B. 2025, postponing the effective date of the RUTC until January 1, 2006. *See* 2003, Ariz. Sess. Laws, ch. 7. The postponement was enacted as emergency legislation. *Id.* In its Second Regular Session of 2004, the Arizona Legislature repealed the RUTC, stating it "reaffirms the efforts of the national conference of commissioners on uniform state laws ... and intends to continue to analyze provisions of the uniform trust code so that acceptable elements may be implemented to improve Arizona trust laws." 2004 Ariz. Sess. Laws, ch. 148, § 2. The Governor signed Chapter 148 into law on April 23, 2004. *Id.* Thus, the RUTC never took effect in Arizona.

15. The Schalkenbach Appellants also rely on *In re Estate of Kidd*, to support their assertion that they are interested persons under A.R.S. § 14–7201. 106 Ariz. 554, 479 P.2d 697 (1971). However, we do not find this case to be instructive on the standing issue. In *Kidd*, a "bachelor of frugal nature" wrote a holographic will that provided his estate "go in research or some scientific proof of a soul of the human body which leaves at death I think in time their can be a Photograph of soul leaving the human at death [sic]." *Id.* at 556, 479 P.2d at 699.

    While the appeal stemmed from a challenge of the willingness of a court-appointed beneficiary

to execute the charitable trust, the case does not provide any insight into Arizona's law regarding standing, let alone discuss who "interested parties" would be for a charitable trust. *Id.* at 558, 479 P.2d at 701. *See also Valley Forge Historical Soc'y v. Washington Mem'l Chapel*, 493 Pa. 491, 426 A.2d 1123, 1128, n. 2 (1981) (noting that "an agency devoted to aiding the deaf generally, had no legally recognized private interest in the disposition of [funds to certain institutions for the blind and deaf] and was, therefore, not a proper party to appeal from a decree in a charitable trust proceeding.").

16. Section 48 of the California Probate Code defines interested persons as the following:

    (a) Subject to subdivision (b), "interested person" includes any of the following:
    (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding. (2) Any person having priority for appointment as personal representative. (3) A fiduciary representing an interested person. (b) The meaning of "interested person" as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding.

the special interest test to find that a party lacked standing where it was a branch of a national organization whose members might be beneficiaries of the trust because the claimed interest must be direct or immediate in character to the extent that the party will either gain or lose by the direct effect of the judgment. *Veterans' Indus., Inc. v. Lynch*, 8 Cal.App.3d 902, 921–23, 88 Cal.Rptr. 303 (1970) (subsidiary whose membership consists of thousands of members lacked standing to intervene).

¶ 46 Other states have also applied the special interest test in determining standing to enforce a charitable trust under their probate codes. *See Sister Elizabeth Kenny Found., Inc. v. Nat'l Found.*, 267 Minn. 352, 126 N.W.2d 640, 643–44 (1964) (national foundation's chances of being named beneficiary might be greater than those of ordinary member of the public but it still had no greater interest in or claim to trust proceeds than other members of the public and thus should not be permitted to intervene in action by trust to permit amendment of trust purposes); *Albert B. Clement Trust*, 679 N.W.2d at 35–38 (under statutes permitting "interested parties" and other persons with a special interest to participate in proceeding involving a charitable trust, mere fact that person was a possible beneficiary was not sufficient to give that person standing, incorporating "special interest" test).

¶ 47 Arizona's probate code directs the courts to consider the type of factors set forth in the statutory language as well as policy considerations that would support or discourage standing. A.R.S. §§ 14–1201(26), and –7201. Accordingly, we hold a common-law "special interest" analysis should be applied. For the reasons stated in our discussion of common-law standing, Appellants lack standing to enforce the trust. This same analysis deprives them of such standing under the probate code and RUTC.

**D. Appellants Do Not Have Standing to Obtain a Writ of Mandamus.**

¶ 48 To have standing to obtain a writ of mandamus, Appellants once again ask us to find that they are "interested parties" to the enforcement of the charitable trust. *See* A.R.S. § 12–2021 ("writ of mandamus may be issued ... on the verified complaint of the *party beneficially interested* ") (emphasis added); *see also Johnson v.Super. Ct.*, 68 Ariz. 68, 70, 199 P.2d 827, 828 (1948) (stating that before issuing a writ of mandamus the court must determine if "the petitioners [had] sufficient interest in the matter to entitle them to contest the order granting a family allowance").[17]

¶ 49 Regardless of whether issue preclusion bars the Schalkenbach Appellants from pursuing such relief, for the reasons stated above we hold Appellants are not parties interested, beneficially or otherwise, in the enforcement of the trust.[18] Appellants were mere potential beneficiaries of the trust. As such, they have even less standing than a person who had unsuccessfully applied for a lease of state land and was found to not be a party beneficially interested to have a writ of mandamus issued requiring officials to approve the lease. *Campbell v. Caldwell*, 20 Ariz. 377, 181 P. 181 (1919). As mere potential beneficiaries and adherents to Henry George's philosophy, they are unlike contingent beneficiaries who are beneficially interested in whether trust proceeds are used to pay a third beneficiary. *Johnson*, 68 Ariz. at 71, 199 P.2d at 830.

¶ 50 Moreover, Appellants lack standing to compel the Attorney General to exercise his discretion. The "general rule is that if the action of a public officer is discretionary that discretion may not be controlled by mandamus." *Sears v. Hull*, 192 Ariz. 65, 68, 961 P.2d 1013, 1016 (1998) (refusing to compel mandamus "if the public officer is not specifically required by law to perform the act"). Here, any authority the Attorney General

---

**17.** The term "party beneficially interested" should "not receive a close construction but must be applied liberally to promote the ends of justice." *Armer v.Super. Ct.*, 112 Ariz. 478, 480, 543 P.2d 1107, 1109 (1975) (citing *Barry v. Phoenix Union High Sch.*, 67 Ariz. 384, 387, 197 P.2d 533, 534 (1948)). However, we still determine that the statutory language requires us to analyze if the party is beneficially interested in the context of the action. *Id.*

**18.** Appellants must also be interested parties to act as relators to bring an action on behalf of the public. Since Appellants are not interested parties to enforce the trust, they are also precluded from acting as relators. *See generally Armer*, 112 Ariz. at 480, 543 P.2d at 1109.

has to initiate a proceeding against the Foundation is discretionary. *See* A.R.S. § 10–11430(A) (providing discretionary authority for the Attorney General to initiate a proceeding to dissolve a nonprofit corporation). Accordingly, this action would be inappropriate for mandamus relief. *Sears,* 192 at 68, 961 P.2d at 1016.

### Conclusion

¶ 51 For the foregoing reasons, we conclude that the probate court correctly dismissed Appellants' petitions and affirm those orders.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge and DANIEL A. BARKER, Judge.