NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Estate of:

VERLE CLIFFORD DOUGHERTY, An Adult.

STEVEN DOUGHERTY, *Petitioner/Appellee,*

*v.*

KLIFTON HOYER, *Respondent/Appellant,*

EDANA RECORD, et al., *Appellees.*

No. 1 CA-CV 21-0237
FILED 1-13-2022

Appeal from the Superior Court in Maricopa County
Nos.  PB 2014-070812
PB 2019-004972
The Honorable Thomas Marquoit, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Frazer, Ryan, Goldberg & Arnold LLP, Phoenix
By Joshua D. Moya, John R. Fitzpatrick
*Counsel for Respondent/Appellant*

Andersen PLLC, Scottsdale
By Mark E. Andersen, Samantha G. Stirling, Mark W. Hawkins
*Counsel for Petitioner/Appellee*

Becker & House PLLC, Scottsdale
By Mark E. House, Andrea B. O'Neill, Amanda L. Barney
*Co-Counsel for Appellees, Record, Teichert, B. Dougherty, A. Dougherty*

Jones Skelton & Hochuli, PLC, Phoenix
By Eileen Dennis Gilbride
*Co-Counsel for Appellees, Record, Teichert, B. Dougherty, A. Dougherty*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**C A M P B E L L**, Judge:

**¶1** Klifton Hoyer appeals from a probate court order clarifying that he was entitled to a 2/15 share of his grandfather's intestate estate. He argues that an earlier order granting summary judgment indicated he was entitled to a 1/3 share of the estate—the entire share his natural mother would have received had she survived his grandfather—even though this result is inconsistent with Arizona's intestacy statutes. *See* A.R.S. §§ 14-2103(1), 14-2106(A). Because the court's interpretation of the earlier order was correct, and because the court had discretion to modify that order, we affirm.

## BACKGROUND

**¶2** Hoyer's grandfather, Verle Dougherty, died in 2019. Verle was survived by his son, appellee Steven Dougherty, and five grandchildren from two predeceased children, Larry Dougherty and Lorna Hoyer. Four of the grandchildren are Larry's daughters, who are also appellees; the fifth is Klifton, Lorna Hoyer's son.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

¶3        Steven, who had been Verle's guardian and conservator before his death, petitioned to be appointed personal representative of the estate. Steven alleged that he was unaware of Verle having a valid will.

¶4        Before his appointment, and without counsel, Steven also petitioned the probate court for instruction as to Klifton's entitlement to inherit an intestate share of Verle's estate. Steven's concern related to Klifton's adoption by a stepmother decades earlier. Believing the adoption had caused Lorna to "sever[] all rights to Klifton," Steven requested the court to "[o]rder[] as follows:"

> A.  Determining [Klifton] is/is not entitled to inherit 1/3 of the intestate estate of [Verle].
>
> B.  Directing the Personal Representative to divide the intestate estate 1/3 to [Steven], 1/3 to [Klifton]; and 1/3 divided equally to [Verle's four granddaughters].
>
> C.  Alternatively directing the Personal Representative to divide the intestate estate half to [Steven] and the other half equally to [Verle's four granddaughters].

¶5        In response, Klifton filed a motion for summary judgment, citing Arizona law confirming his right as a child adopted by the spouse of a natural parent "to inherit from or through" both natural and adoptive parents. *See* A.R.S. § 14-2114(B); *see Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 5, ¶ 17 (2016). Klifton requested the court "provide instructions that, by representation, [he] [wa]s entitled to inherit his [m]other's share of [Verle's] intestate estate."

¶6        Klifton's motion went unopposed, and the probate court issued its proposed order (the inheritance order), providing, in relevant part, the following:

> IT IS ORDERED granting the Motion for Summary Judgment.
>
> IT IS FURTHER ORDERED determining and instructing the Personal Representative that pursuant to A.R.S. §§ 14-2103(1) and 14-2114(B), and by representation, [Klifton] is entitled to inherit *the share of his mother*, [Lorna], in the intestate [e]state of [Verle].

(emphasis added).

¶7          More than a year later, after a change of judge, Klifton took the position that the inheritance order entitled him to a 1/3 share of Verle's estate—the share his mother would have received had she survived—even though it is undisputed that Arizona's intestacy statutes only entitled him to a 2/15 or 13.33% share. *See* A.R.S. §§ 14-2103(1), 14-2106(A). When a decedent is survived only by his descendants, his intestate estate passes to them by representation. *See* A.R.S. § 14-2103(1). In Arizona, representation occurs per capita at each generation, unless otherwise specified in a decedent's will. *See* A.R.S. §§ 14-2101, 14-2106. Under this system, survivors in each generation receive an equal share. *See* A.R.S. § 14-2106. The shares of predeceased members of the generation who have surviving descendants of their own are then recombined and distributed in the same manner at the next generation with survivors. *See id.* This system of representation is distinct from the traditional per stirpes system under which the shares of predeceased members pass directly to their descendants. Here, Steven should receive a 1/3 share; Klifton and Larry's four daughters should receive equal portions of the combined shares Lorna and Larry would have received had they survived (1/3 each), meaning each grandchild should receive a 2/15 share (2/3 divided five ways).[2]

¶8          Steven, now acting as personal representative through counsel, moved for clarification regarding whether the inheritance order directed deviation from Arizona's intestacy statutes.[3]

¶9          At the conclusion of oral argument on the personal representative's motion, the probate court described the inheritance order as "inartfully drafted" and "not clear" and declined to adopt an "interpret[ation] . . . that is not allowed under the law." In March 2021, the court granted the motion for clarification issuing an order (the clarification order), confirming that "[t]he effect of [the inheritance order]" entitled Klifton only to a 13.33% share of Verle's intestate estate. Klifton timely appealed from the clarification order.

---

[2] Steven's petition for instruction appears to be based on a per stirpes system of representation— a mistake as to the law which the probate court had an obligation to correct.

[3] Below, we refer to Steven as the personal representative when acting in that capacity.

4

**DISCUSSION**

## I.     Clarification of Inheritance Order

¶10     Klifton's sole argument on appeal is that the probate court erred in interpreting the inheritance order. The interpretation and application of statutes and court orders are issues of law, which we review de novo. *In re Estate of Friedman*, 217 Ariz. 548, 553, ¶ 13 (App. 2008). In interpreting court orders, "we apply the general rules of construction for any written instrument." *Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 11 (App. 2007). The first step is to determine if the order's language is ambiguous, meaning it "is reasonably susceptible to more than one interpretation." *Id.* (internal quotation marks omitted). In evaluating meaning, we consider the context of the words and the context of the order, and we construe its language "according to [its] natural and legal import." *Id.* (internal quotation marks omitted). If a provision is ambiguous, we adopt the meaning that is most consistent with other provisions in the order and with "the court's statutory duty." *Id.* at 66–67, ¶¶ 13–14.

¶11     Klifton argues that, by referencing "the share of his mother," the inheritance order plainly granted him the 1/3 share of Verle's estate Lorna would have inherited had she survived. He posits that the probate court would have mentioned Larry's share had it meant for him to receive a portion of Larry and Lorna's combined shares.

¶12     Contrary to Klifton's argument, the inheritance order did not state the size of the share to which Klifton was entitled. Instead, it instructed the personal representative that Klifton was entitled to inherit "by representation . . . pursuant to [§] 14-2103(1)," which governs intestate distribution, "and [§] 14-2114(B)," which confirms the right of an adopted stepchild to inherit "from or through" both natural parents. Because Arizona's intestacy statutes, including its representation provisions, would not grant Klifton "the share of his mother," the inheritance order is, at a minimum, ambiguous, if not plainly contrary to the interpretation Klifton urges this court to adopt.

¶13     Considering the references to Arizona's intestacy and adoption statutes, along with the probate court's statutory duty to effectuate these laws, the inheritance order most plausibly meant that Klifton was entitled to inherit *through* his mother, by representation. *See* A.R.S. § 14-2103(1) ("[T]he entire intestate estate if there is no surviving spouse passes . . . [t]o the decedent's descendants by representation."); *see also* A.R.S. § 14-2114(B) (child adopted by natural parent's spouse has right

to inherit "from or through the other natural parent"). The order does not appear intended to specify what share Klifton should receive; instead, it provides the personal representative the guidance he needed to calculate Klifton's share under Arizona's intestacy statutes.

¶14        Klifton argues the reference to § 14-2103(1) does not render the inheritance order ambiguous because § 14-2103(1) "is not the statute that explains the meaning of 'by representation.'" The meaning of "by representation" is explained, however, by a provision in the same article, § 14-2106(A). The probate court did not need to list every relevant provision of that article to provide the personal representative the guidance he sought. *See Guzman v. Guzman*, 175 Ariz. 183, 187 (App. 1993) ("It is a cardinal rule of construction that statutory provisions must be considered in the context of the entire statute . . . ."). If this court were to adopt Klifton's interpretation of the order, it would render the order's reference to Arizona's intestacy law meaningless, contrary to how we interpret ambiguous text. *See Cohen*, 215 Ariz. at 66, ¶ 12 ("[W]e may not assign meaning to one provision which would render other provisions meaningless."). Moreover, because Klifton's mother predeceased Verle, she was not entitled to *any* share. A literal interpretation of the phrase "the share of his mother" would not entitle him to anything.

¶15        Klifton further argues that, even if the inheritance order was ambiguous, context renders the probate court's clarification unreasonable. He contends the order must have granted him a 1/3 share because the probate court granted his motion for summary judgment, which referenced "his [m]other's share" of Verle's estate, or alternatively, because it addressed the personal representative's petition, which asked whether Klifton was entitled to a 1/3 share. But Klifton's motion for summary judgment and proposed order only claimed his entitlement to inherit his mother's share *by representation*. Under Arizona law, his mother's share (along with Larry's share) would be split equally among all five grandchildren—the net result being that Klifton would receive far less than "the share of his mother." *See* A.R.S. § 14-2106(A).

¶16        Furthermore, contrary to Klifton's argument, the probate court did not necessarily grant the relief requested by the parties. *See Fenter v. Homestead Dev. & Tr. Co.*, 3 Ariz. App. 248, 252 (1966) (noting that "litigant is entitled to relief in conformity with the evidence presented to the court," even if different than relief sought in prayer). It had discretion to issue any order that would reasonably protect the interests of Klifton and the other heirs. *See* A.R.S. § 14-3607(A) (authorizing court to restrain personal representative, exercise his powers, or "make any other order to secure

proper performance of his duty" upon petition from interested person if necessary to protect interested parties).[4] And it had discretion to give the personal representative any guidance that would help him properly administer the estate. *See* A.R.S. § 14-3704 (allowing personal representative to invoke probate court's jurisdiction "to resolve questions concerning the estate or its administration"). The court was not bound to perpetuate what Klifton characterizes as the personal representative's "misunderstanding" of Arizona's intestacy statutes.

¶17 On this record, Klifton has not shown that the probate court erred in concluding it was not plausible that the judge who issued the inheritance order intended to convey to Klifton anything other than what he was entitled to under Arizona statute. *See* A.R.S. §§ 14-2103(1), 14-2106(A); *see also Cohen*, 215 Ariz. at 67, ¶ 14 (presuming court complied with statutory duty in issuing orders).

¶18 Finally, even were Klifton correct that the inheritance order attempted to erroneously grant him a 1/3 share of Verle's estate, the probate court would have committed no error by correcting the mistake in the clarification order. The inheritance order, which had not been reduced to a final judgment, remained interlocutory, meaning the probate court retained jurisdiction to clarify, revise or even vacate it. *See Stevens v. Mehagian's Home Furnishings, Inc.*, 90 Ariz. 42, 45 (1961); *see also* Ariz. R. Civ. P. 54(b).

¶19 In sum, the probate court did not err in clarifying that the inheritance order entitled Klifton to a 13.33% share of Verle's intestate estate.

## II. Sanctions

¶20 The personal representative and the granddaughters request attorneys' fees as a sanction pursuant to ARCAP 25. Under ARCAP 25, we have discretion to impose sanctions, including attorneys' fees, on an attorney or a party if an appeal is frivolous. An appeal is frivolous if "any reasonable attorney" would believe it is "completely without merit." *Evans v. Arthur*, 139 Ariz. 362, 363 n.1 (1984) (internal quotation marks omitted). We impose sanctions under ARCAP 25 "with great reservation" and only where an appeal is not supported by "any legal theory about which

---

[4] Klifton's motion for summary judgment is a "petition" for purposes of § 14-3607. *See* A.R.S. § 14-1201(48) (defining "petition" as "a written request to the court for an order after notice").

reasonable attorneys could differ." *Ariz. Tax Rsch. Ass'n v. Dep't of Revenue*, 163 Ariz. 255, 258 (1989) (internal quotation marks omitted).

¶21        During oral argument, the probate court asked Klifton's counsel what legal basis there was, other than the inheritance order, for him to receive a 1/3 share of Verle's intestate estate. Counsel responded, "[t]here wouldn't be one." Indeed, Klifton concedes in his opening brief that Arizona's intestacy statutes "direct that" he receive a 13.33% share of Verle's estate. Stated differently, Klifton's argument is that the probate court erred as a matter of law by implying that he was entitled to a 1/3 share, and then erred again by declining to adopt an interpretation binding itself to that error.

¶22        Even were we to agree with Klifton's interpretation of the inheritance order, he could only prevail if the probate court would have committed error by correcting the previous order. *See Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 181, ¶ 21 (App. 2004) ("We will affirm a trial court's decision if it is correct for the wrong reason."). Essentially, Klifton's argument is a misapplication of the law of the case doctrine, which, at the trial court level and absent an intervening appeal, involves prudential limits on when the court may reconsider its prior rulings. *See State v. King*, 180 Ariz. 268, 279 (1994). As relevant here, that doctrine does not prevent a judge from reconsidering nonfinal orders, including those made by a different judge in the same case. *Id.* This principle is embodied in Rule 54(b), which provides that any decision without an express recital of finality "may be revised at any time" before entry of a final judgment. *See* Ariz. R. Civ. P. 54(b).

¶23        Klifton does not cite any contrary legal authority; he merely argues that the probate court could not amend the inheritance order in response to a motion for clarification. On this record, Klifton's appeal is not supported by any arguably-sound legal theory. Accordingly, we award the personal representative and the four granddaughters their reasonable attorneys' fees incurred on appeal, as a sanction pursuant to ARCAP 25, and taxable costs on appeal, all pending their compliance with ARCAP 21.

**CONCLUSION**

**¶24** For the reasons above, we affirm the probate court's order filed March 3, 2021.

