In the Matter of the PUBLIC BENEVO-LENT TRUST U/W Mary Powell CRUME, deceased; Indianapolis Humane Society, Trustee,

Norma Jean Balcom; Spay–Neuter Services of Indiana, Inc.; Alliance for Responsible Pet Ownership, Inc.; Home for Friendless Animals, Inc.; Southside Animal Shelter, Inc.; and Move to Act, Appellants–Petitioners,

v.

The Humane Society of Indianapolis, Inc. and Attorney General of Indiana, Appellees–Respondents.

No. 49A05–0409–CV–489.

Court of Appeals of Indiana.

June 28, 2005.

Veronica L. Jarnagin, Geoffrey Slaughter, Maggie L. Smith, Sommer Barnard Attorneys, P.C., Indianapolis, for Appellants.

Alan J. Irvin, Peter H. Donahoe, Hill Fulwider McDowell Funk & Matthews, P.C., Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

MAY, Judge.

A coalition of animal welfare providers, including Spay–Neuter Services of Indiana, the Home for Friendless Animals, the Southside Animal Shelter, the Alliance for Responsible Pet Ownership, and Move to ACT (collectively, "the Animal Welfare Providers") appeal the dismissal for lack of standing of their complaint and their objections to a trustee's accounting. The motion to dismiss was brought by the Humane Society of Indianapolis, the sole beneficiary[1] and sole trustee of the Trust, and the Attorney General (collectively, "the Humane Society"). The Animal Welfare Providers raise a single issue on appeal, which we restate as whether they are persons "having an interest in the administration or the benefits of a trust," Ind.Code § 30–4–5–12(c), who may therefore maintain litigation relating to a public charitable trust.

We affirm.[2]

## FACTS AND PROCEDURAL HISTORY

The Humane Society of Indianapolis is the sole trustee and sole beneficiary of a testamentary trust established by the will of Mary Powell Crume. The Crume Trust was docketed in 1962 as a public charitable trust and the probate court determined in 1962 that the Humane Society had the authority to

> use either the principal or the income of the trust estate and property ... to pay for buildings, equipment, salaries, or any expenses, provided that the purpose of such expenditures is for the relief of animals which may come into its care and protection, and provided that approval of this court for such expenditures is first obtained.

(Appellants' App. at 26–27.) The value of the Trust in 1962 was 1.6 million dollars.

The Trust is required to file an annual accounting. The 2003 accounting indicated the value of the Crume Trust on January 31, 2004 was about 3.4 million dollars. In March of 2004 the Humane Society petitioned the probate court to allow it to pledge 90% of the trust assets as collateral for a line of credit the Humane Society

---

1. The Animal Welfare Providers assert in their reply brief the Humane Society's claim it is the sole beneficiary of the Crume Trust is inaccurate, as it was the testator's intent that "*animals* were to be the actual beneficiaries of the trust." (Consolidated Reply Br. of Appellants at 1) (emphasis in original). However, in their own complaint, the Animal Welfare Providers refer to the Humane Society as "the named beneficiary." (Appellants' App. at 90.) They also characterize the Humane Society as "the consummate spendthrift beneficiary," (*id.* at 93), and state "HSI was designated as the sole income beneficiary of the Crume Trust as long ago as 1935." (*Id.* at 95.)

2. We heard oral argument May 24, 2005, in Indianapolis. We commend counsel on the quality of their oral advocacy.

needed to fund its animal shelter. The line of credit would not exceed 50% of the value of the Trust, or 1.7 million dollars. The court granted the petition.

The Animal Welfare Providers objected to the Humane Society's accounting and its petition to allow the pledging of the trust assets. The Humane Society and the Attorney General both moved to dismiss for lack of standing and the motions were granted.[3]

## DISCUSSION AND DECISION

### Standard of Review

■■■ We review de novo a decision by a trial court to dismiss for lack of standing. *Area Plan Comm'n, Evansville–Vanderburgh County v. Hatfield*, 820 N.E.2d 696, 698 (Ind.Ct.App.2005) (whether individuals are "aggrieved persons" for the purpose of challenging a planning commission decision is a pure question of law that does not require deference to the determination of the trial court). The facts alleged in the complaint must be taken as true, and only where it appears that under no set of facts could the plaintiff be granted relief is dismissal appropriate. *In re Custody of G.J.*,

796 N.E.2d 756, 759 (Ind.Ct.App.2003), *trans. denied.* The standing analysis focuses on whether the complaining party is the proper person to invoke the court's power. *Scott v. Randle*, 736 N.E.2d 308, 315 (Ind.Ct.App.2000), *trans. denied.* The standing requirement assures litigation will be actively and vigorously contested, as plaintiffs must demonstrate a personal stake in the litigation's outcome and must show they have sustained, or are in immediate danger of sustaining, a direct injury as a result of the defendant's conduct. *Id.*

### Statutory and Common Law Standards

Ind.Code § 30–4–5–12(c) provides in pertinent part:

> Upon petition by the settlor, a beneficiary or his personal representative, a person designated by the settlor to have advisory or supervisory powers over the trust, or *any other person having an interest in the administration or the benefits of the trust,*[4] *including the attorney general in the case of a trust for a benevolent public purpose,* the court may direct the trustee to file a verified written statement of accounts showing

---

**3.** The Animal Welfare Providers included in their objection a complaint asking the Humane Society be removed as trustee. That complaint was dismissed when the Animal Welfare Providers were dismissed for lack of standing. We address in this decision only the standing question, and express no opinion on the propriety of the probate court's decision to allow the Humane Society to pledge 90% of the Crume Trust assets.

**4.** The Animal Welfare Providers argue at some length that this section abrogated *Boice v. Mallers*, 121 Ind.App. 210, 216–17, 96 N.E.2d 342, 344–45 (1950), *trans. denied* 229 Ind. 325, 98 N.E.2d 368 (1951), where we stated:

> [I]nasmuch as the enforcement of public charities are matters of public interest the attorney general appearing as a public officer is the proper party to maintain litigation

involving questions of public charitable trusts. And an individual member of the public has no right as such to maintain a suit of such character.

Therefore, they say, the probate court erred when it "held that, as a matter of law, the Attorney General is the sole entity permitted to litigate matters involving public charitable trusts." (Br. of Appellants at 21.)

In fact, the probate court made no such holding. The court quoted *Boice*, but also noted the current statute and explicitly found none of the Animal Welfare Providers were "*person[s] having an interest in the administration or the benefits of the trust.*" (Appellants' App. at 146) (emphasis in original). The parties' disagreement over the effect of the statute on the *Boice* rule is addressed at length below.

the items listed in section 13(a) of this chapter.

(Emphasis supplied) (footnote added). When a court has been requested by petition to approve a verified written statement of accounts, any person authorized by Ind.Code § 30–4–5–12(c) to petition for an accounting may file an appropriate responsive pleading. Ind.Code § 30–4–5–14(b).

Prior to the promulgation of section 30–4–5–12(c), the common-law standard for standing in an action such as this was articulated in *Boice v. Mallers*, 121 Ind.App. 210, 216–17, 96 N.E.2d 342, 344–45 (1950), *trans. denied* 229 Ind. 325, 98 N.E.2d 368 (1951). There we stated:

> The law is well settled that inasmuch as the enforcement of public charities are matters of public interest the attorney general appearing as a public officer is the proper party to maintain litigation involving questions of public charitable trusts. And an individual member of the public has no right as such to maintain a suit of such character.

The Animal Welfare Providers characterize *Boice* as holding *"only* the Attorney General was authorized to" maintain litigation relating to public charitable trusts. (Br. of Appellants at 17) (emphasis added). While *Boice* states the Attorney General is the "proper party," it does not explicitly exclude all other parties. To the contrary, immediately before stating the Attorney General was the "proper party," the *Boice* court noted "the appellee, Nick Mallers,

who had no interest in the trust estate, *as a creditor, heir, legatee, or beneficiary,* had no right as a member of the public to maintain such suit or to question the actions of the trustee of a charitable trust." 121 Ind.App. at 216, 96 N.E.2d at 344 (emphasis supplied). As such, the court indicated a creditor, heir, legatee, or beneficiary has a sufficient interest to confer standing. We therefore decline the Animal Welfare Providers' invitation to hold the statute "abrogat[ed] *Boice*'s holding that only the Attorney General has standing" (Br. of Appellants at 21), because *Boice* did not so hold.

■ The legislature did not abrogate *Boice*, but rather codified it. The statute did grant standing to some parties who did not have it at common law, *i.e.,* settlors, but it did not confer on members of the general public standing to maintain litigation regarding public charitable trusts.

■ In so holding, we recognize two principles of statutory construction. First, it is presumed the legislature does not intend to make any changes in the common law beyond those declared either in express terms or by unmistakable implication. *State v. Willits*, 773 N.E.2d 808, 813 (Ind.2002). Therefore, the *Boice* limitations remain, and the only expansion of standing is for parties explicitly included in the statutory language, *i.e.,* settlors, and entities with interests similar in nature to those listed in the statute.[5]

---

**5.** The statute lists as persons with standing a "settlor, a beneficiary or his personal representative, a person designated by the settlor to have advisory or supervisory powers over the trust, or any other person having an interest in the administration or the benefits of the trust, including the attorney general in the case of a trust for a benevolent public purpose[.]" Under the "ejusdem generis rule," "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *J.A.W. v. State, Marion County Dept. of Public Welfare*, 687 N.E.2d 1202, 1205 n. 21 (Ind.1997) (*quoting* Black's Law Dictionary 517 (6th ed.1990)).

■ Second, it is presumed the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind.2002). Accordingly, where *public* charitable trusts are involved, we may not interpret the statutory reference to "any other person having an interest in the administration or the benefits of the trust" to extend standing to all members of the public. Such a result could not have been intended, and we must therefore reject the broad reading of the statutory language urged by the Animal Welfare Providers.

Nor may we adopt a reading of the statute as narrow as that urged by the Humane Society, which argues only the Attorney General and the Humane Society as sole named beneficiary of the Crume Trust could have standing, as that reading would be inconsistent with the plain language of the statute.

The Animal Welfare Providers assert they are "persons having an interest in the administration or benefits of [the] trust" for four reasons. First, they assert they will carry an increased burden of caring for animals should the Humane Society be forced to curtail its services. Second, they assert they are entitled to present to the probate court the option to substitute the Animal Welfare Providers for the Humane Society as trustees or beneficiaries of the Trust. Third, they assert they would, if the Humane Society became unable to carry out the purposes of the Trust, have the right to ask the probate court to appoint them trustee or income beneficiary under the *cy pres* doctrine. Finally, they assert generally they should have standing pursuant to the "modern trend" (Br. of Appellants at 15) to broaden the class of entities with standing to maintain litigation regarding public charitable trusts.

### The Animal Welfare Providers' Interest in the Crume Trust

■ The Animal Welfare Providers first argue they have an interest in the administration or benefits of the Crume Trust because they, like the Humane Society, fulfill the purposes of the Trust, and in fact care for more animals than does the Humane Society. The Humane Society, they claim, has significantly cut its services due to financial troubles, and they have taken over responsibility for animals the Humane Society has turned away. The Animal Welfare Providers have done so without financial backing from the Trust. They further assert that in light of the Humane Society's financial problems over the past few years and its current negative cash flow, "it is reasonable to fear that the Humane Society will ... end up insolvent[.]" (*Id.* at 24.) All this, they assert without explanation or citation to authority, gives them a "direct interest in the current administration of the Crume Trust sufficient to establish standing pursuant to Section 12(c)." (*Id.* at 22.)

■ We disagree. The speculative suggestion the Animal Welfare Providers may someday be called on to carry out the duties currently undertaken by the Humane Society does not give rise to an "interest" as contemplated by the statute and *Boice*, as only the Humane Society is named in the Crume Trust and the plain language of the Trust does not allow the Animal Welfare Providers to become potential or contingent beneficiaries even should the speculative sequence of events they contemplate occur. "The mere fact that a person is a possible beneficiary is not sufficient to entitle him to maintain a suit for the enforcement of a charitable trust." [6] Restatement (Second) of Trusts § 391 cmt. c (1959).

6. We do not suggest by our holding today that the Animal Welfare Providers might not in the

### Equitable Deviation and Cy Pres

■■■■ Second, the Animal Welfare Providers argue they have an interest in the Trust pursuant to the doctrine of equitable deviation. Under the doctrine of equitable deviation,

> the court will permit the trustees to deviate from the mechanical means of administration of the trust where circumstances not known or foreseen by the testator have come about, and where such change in circumstances in combination with the administrative means provided in the trust would defeat or substantially impair the accomplishment of the intended trust purpose.[7]

*Sendak v. Trustees of Purdue University,* 151 Ind.App. 372, 379–80, 279 N.E.2d 840, 845 (1972) (footnote supplied). Application of this doctrine, they say, gives them a sufficient interest in the Trust to confer standing because it would allow the probate court to substitute them as trustees or income beneficiaries of the Crume Trust.

The Animal Welfare Providers assert the Humane Society "has stated unequivocally that, under the current administrative provisions of the Crume Trust, it is unable to accomplish the trust's intended purpose of continuing to care for animals." (Br. of Appellants at 23.) They do not offer a citation to the record for any such "unequivocal" statement, but they note the Humane Society stated in its petition to

future acquire standing should some or all of the events they anticipate come to pass. However, they do not presently have standing, as we believe the statute requires more than a purely speculative potential future interest.

7. This doctrine appears to have been codified. *See* Ind.Code § 30–4–3–26:

> Upon petition by the trustee or a beneficiary, the court shall direct or permit the trustee to deviate from a term of the trust if,

pledge that it "does not have sufficient funds *from donations and interest on investments* to continue daily operations[.]" (Appellants' App. at 74) (emphasis supplied).

The Animal Welfare Providers assert they are financially stable and stand ready to fulfill the purposes of the Trust without placing the Trust assets at risk. Because they are legally entitled to present this option to the probate court, they assert, they have a "direct interest in both the current administration and the benefits of the Crume Trust sufficient to satisfy Section 12(c)." (Br. of Appellants at 24.)

■■■■ Third, the Animal Welfare Providers assert an interest under the *cy pres* doctrine:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

*Quinn v. Peoples Trust & Sav. Co.,* 223 Ind. 317, 328, 60 N.E.2d 281, 285 (1945), (quoting Restatement of the Law of Trusts § 399).

> owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. In that case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust, or may prohibit the trustee from performing acts required by the terms of the trust.

The Animal Welfare Providers assert that in light of the Humane Society's financial problems over the past few years and its current negative cash flow, "it is reasonable to fear that the Humane Society will ... end up insolvent, which will mean that fulfilling the Trust's intended purposes will become impossible." (Br. of Appellants at 24.) If that happens, they assert, they would have a right to ask the probate court to appoint one or more of the Animal Welfare Providers as trustee and income recipient under the *cy pres* doctrine. This, they say, gives them a present interest in the administration of the Trust.

 We decline to hold the Animal Welfare Providers have a present interest in the Crume Trust under either doctrine. Equitable deviation is not available until "circumstances not known or foreseen by the testator *have come about*," and the *cy pres* doctrine is not applicable until the charitable purpose *"is or becomes* impossible or impracticable or illegal to carry out." Neither doctrine is presently applicable to the Crume Trust; we must accordingly decline the Animal Welfare Providers' invitation to find an interest in the Trust arises out of a speculative chain of events that has not played out.

### The Animal Welfare Providers' Interests as Potential Beneficiaries

 Finally, the Animal Welfare Providers assert there is a "modern trend" to confer standing on persons who represent a class of actual or prospective trust beneficiaries. (*Id.* at 26.) They rely on two decisions: *Alco Gravure, Inc., v. The Knapp Foundation,* 64 N.Y.2d 458, 490 N.Y.S.2d 116, 479 N.E.2d 752 (1985) *amendment denied* 67 N.Y.2d 717, 499 N.Y.S.2d 942, 490 N.E.2d 861 (1986), and

*Hooker v. Edes Home,* 579 A.2d 608, 612 (D.C.Ct.App.1990).

The Animal Welfare Providers acknowledge the general rule that one who is merely a possible beneficiary of a charitable trust, or a member of a class of possible beneficiaries, is not entitled to sue for enforcement of the trust. *See Alco Gravure,* 490 N.Y.S.2d 116, 479 N.E.2d at 755. Instead, the Attorney General has the statutory power and duty to represent the beneficiaries of any disposition for charitable purposes. *Id.* There is an exception to the general rule, however, when a particular group of people has a "special interest" in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number. *Id.*

In *Hooker,* the trustees sought to close a free home for elderly widows. Some elderly widows sought to intervene in the probate action, and the trial court granted the trustees' motion for summary judgment based on the widows' lack of standing. The appellate court reversed, holding the widows had standing because 1) they were members of a small class of persons who had a special interest in the enforcement of the trust, 2) they had a present opportunity to enjoy a direct benefit that was markedly different from the incidental and indirect benefit to the public, and 3) they were challenging whether the trustees' proposed action was compatible with the settlor's intent. 579 A.2d at 616–17.

In *Alco Gravure,* Alco was an alleged successor to a nonprofit corporation whose primary purpose was to assist employees of the founder's corporations and their families. After applications for such assistance declined, the trustees decided to dissolve the foundation and transfer the assets to another charitable entity founded by the same person. Alco and some of its

employees brought an action to prevent the foundation from dissolving and transferring its assets.

The trial court dismissed the complaint but the court of appeals reversed. It held the plaintiffs had standing because they had a "special interest" in the funds held by the foundation for its charitable purpose. 479 N.E.2d at 756. They represented a class of beneficiaries that was both "well defined and entitled to a preference in the distribution of the foundation's funds," *id.* at 755, and their action "concerns not the ongoing administration of a charitable corporation, but the *dissolution of that corporation and the complete elimination of the individual plaintiffs' status as preferred beneficiaries* "[8] of the funds originally donated. *Id.* at 756 (emphasis supplied).

We decline to hold the Animal Welfare Providers have standing under the reasoning in *Hooker* and *Alco Gravure.* In both cases there were specific and identifiable classes of beneficiaries and the parties seeking standing presently qualified as class members. In *Hooker*, the elderly, indigent widows satisfying the Trustees' own eligibility requirements had standing to challenge proposed actions that might affect their special interest as a class in the continued administration of the trust: "All such members have a *present opportunity* to enjoy a *direct benefit* differing markedly from the incidental and indirect benefit the public realizes from the housing of indigent elderly widows." 579 A.2d at 617 (emphasis supplied). In *Alco*, the class of beneficiaries was "well defined" and had "preference" in the distribution of the foundation's funds. 479 N.E.2d at 755.

The Crume Trust, by contrast, does not create a class of beneficiaries that might

include the Animal Welfare Providers despite their "hope that a chain of events that has not occurred will give rise to a class." (Appellee's Br. of the Humane Society of Indianapolis, Inc. at 16.) The Animal Welfare Providers are not named beneficiaries nor are they members of the type of beneficiary class contemplated by the *Hooker* and *Alco Gravure* exceptions to the general rule of non-standing. *See also Robert Schalkenbach Fdn. v. Lincoln Fdn., Inc.,* 208 Ariz. 176, 91 P.3d 1019, 1025 (App.2004) (noting situations where courts have permitted private individuals, *whose positions with regard to the charitable trust were more or less fixed,* to sue for its enforcement) (citing George Gleason Bogert, *The Law of Trusts and Trustees* § 414 (rev.2d ed. Supp 2003)), *review denied.* These decisions have been regarded in the past as exceptional and dependent in large part on special circumstances showing the plaintiff was certain to receive trust benefits, or on lack of opposition to the capacity of the complainant. *Id.* Such special circumstances are not present in the case before us.

## CONCLUSION

The Animal Welfare Providers lack standing to challenge the Humane Society's petition to pledge the assets of the Crume Trust. Ind.Code § 30–4–5–12(c) does not confer on members of the general public standing to maintain litigation regarding public charitable trusts. While it is possible the Animal Welfare Providers might acquire a statutory "interest" should the Humane Society become unable to carry out the charitable purposes of the Crume Trust, they presently have no such interest. We must accordingly affirm the

---

**8.** The Animal Welfare providers do not mention this italicized language. Rather, they state the court found standing because the

action was "specific and particular." (Br. of Appellants at 28.)

dismissal of the Animal Welfare Providers' complaint.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.