23-1269-cv
*Isr. Acad. of Scis. and Humans. v. Am. Found. for Basic Rsch. in Isr., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of July, two thousand twenty-four.

PRESENT:
> AMALYA L. KEARSE,
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> *Circuit Judges*.

---

ISRAEL ACADEMY OF SCIENCES AND HUMANITIES,

> *Plaintiff-Appellant*,

v.                                                          23-1269-cv

AMERICAN FOUNDATION FOR BASIC RESEARCH IN ISRAEL, INC.,

> *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:       ANDREW H. SCHAPIRO (Yehuda Goor, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York.

FOR DEFENDANT-APPELLEE:        DANIEL P. RUBEL (Stuart A. Krause and Kerry A. Duffy, *on the brief*), Zeichner Ellman & Krause LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on August 25, 2023, is **AFFIRMED**.

Plaintiff-Appellant Israel Academy of Sciences and Humanities (the "Academy") appeals from the district court's dismissal of its amended complaint against Defendant-Appellee American Foundation for Basic Research in Israel, Inc. (the "Foundation") for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). The Academy, an academic body created to advance scientific research in Israel, brought claims under New York law seeking declaratory relief, financial accounting, imposition of a constructive trust, and monetary damages against the Foundation, a charitable nonprofit corporation in New York, based on the Foundation's refusal to turn over charitable donations to the Foundation. Applying New York law, which both sides agree governs the action, the district court concluded that the Academy lacked standing to challenge the Foundation's actions. *Isr. Acad. of Scis. and Humans. v. Am. Found. for Basic Rsrch. in Isr., Inc.*, No. 22-cv-4810 (ER), 2023 WL 5509309, at *5–7 (S.D.N.Y. Aug. 25, 2023). On appeal, the Academy primarily argues that it has standing due to its special interest in the Foundation. Alternatively, it asserts that it has standing as a donor to, or co-trustee of, the Foundation.

We review legal issues related to the district court's dismissal for lack of standing *de novo*, and any factual findings for clear error. *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 45 (2d Cir. 2015). In doing so, we assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

2

In this diversity action, we determine the substantive law of the state *de novo*, with "the greatest weight [afforded] to decisions of" the state's highest court. *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997). If the state's highest court is silent on an issue, we "carefully . . . predict how . . . [it] would resolve the uncertainty or ambiguity" in light of decisions of the state's lower courts and other persuasive case authority. *Id.* (internal quotation marks and citation omitted).

Under New York law, standing to challenge actions of a nonprofit corporation is generally unavailable to "one who is merely a possible beneficiary . . . , or a member of a class of possible beneficiaries." *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 465 (1985). Instead, New York law allows the New York Attorney General to bring such suits on behalf of beneficiaries, N.Y. EST. POWERS & TRUSTS LAW § 8-1.1(f), in order to "prevent vexatious litigation and suits by irresponsible parties who do not have a tangible stake in the matter." *Alco Gravure*, 64 N.Y.2d at 466. However, a narrow exception to the general rule applies "when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distribution of such funds and the class of potential beneficiaries is sharply defined and limited in number." *Id.* at 465; *see also* RESTATEMENT OF CHARITABLE NONPROFIT ORGS. § 6.05 Reporters' Notes cmt. (a)(5) (AM. L. INST. 2021) ("Courts tend to grant special-interest standing sparingly."). Although New York's highest court has not expressly spoken to the issue of what forms of evidence can serve as the basis for this determination, the Second Department of the Appellate Division has clarified that in the case of a charitable trust, "[t]his 'special interest' is found by looking to the trust's chartering documents to discern the purpose of the trust, and whether there is a class of intended beneficiaries that is entitled to a preference and is sharply

3

defined and limited in number."[1]  *Sagtikos Manor Hist. Soc'y, Inc. v. Robert David Lion Gardiner Found., Inc.*, 127 A.D.3d 1056, 1057 (2d Dep't 2015) (citations omitted); *see also In re Agudist Council of Greater N.Y. v. Imperial Sales Co.*, 158 A.D.2d 683, 683 (2d Dep't 1990) (discerning corporate purpose from its certificate of incorporation).

The Foundation's chartering document is its certificate of incorporation,[2] which states that its purpose is to support "charitable, scientific, or educational purposes, including to support and encourage the conducting of basic scientific research *in the State of Israel or elsewhere*."  Joint App'x at 45 (emphasis added).  It makes no mention of the Academy, nor describes any ascertainable class of intended beneficiaries.[3]  Accordingly, the Foundation's certificate of incorporation does not allow us "to discern . . . a class of intended beneficiaries that is entitled to a preference and is sharply defined and limited in number," as opposed to the broad worldwide class of potential beneficiaries involved in basic scientific research.  *See Sagtikos Manor*, 127 A.D.3d at 1057.

---

[1]  This approach is consistent with the holding of the Court of Appeals in *Alco Gravure* that the employees of certain corporations in which businessman Joseph P. Knapp was involved—and those corporations' successors—had a special interest in the Knapp Foundation's funds because the legislative act establishing the Knapp Foundation stated that its purpose was "to render aid and assistance to promote the social, physical or economic welfare and efficiency of such persons as have been, or at any time in the future shall be, employed in any printing, publishing or lithographing corporation of which Joseph P. Knapp has been or shall hereafter be a stockholder, director or officer, or in any corporation which shall be a successor corporation thereto."  64 N.Y.2d at 462–63, 465–66.

[2]  *See Charter*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An instrument that establishes a[n] . . . organization;" "corporate charter[:] 1. See *certificate of incorporation* . . . . 2. A document that one files with the secretary of state upon incorporating a business.").

[3]  Similarly, the Foundation's bylaws allow it "to make grants to any domestic or foreign organization which is organized and operated exclusively for charitable, scientific or educational purposes," without reference to the Academy or any geographic or other restriction.  Joint App'x at 101.

The Academy contends that we should read *Sagtikos Manor* more broadly, despite its clear language stating that the existence of a "'special interest' is found by looking to the trust's chartering documents," *id.* In particular, the Academy argues that because the Second Department noted that the donor who established the foundation did not include in his will any mention of the plaintiff historical society, *id.* at 1057–58, we should consider gift agreements and other evidence beyond the Foundation's chartering documents in determining whether the Academy has a special interest here. Appellant's Reply Br. at 10. The Academy's reading overstates the holding of *Sagtikos Manor* for several reasons.

First, the court expressly held, in discussing this precise question, that the requisite "'special interest' *is found by looking to the trust's chartering documents* to discern the purpose of the trust[] and whether there is a class of intended beneficiaries that is entitled to a preference and is sharply defined and limited in number." *Sagtikos Manor*, 127 A.D.3d at 1057 (emphasis added). The court proceeded to describe in particular that foundation's chartering documents, noting that its "certificate of incorporation, as amended in 1987, . . . states that the Foundation's purpose includes educating the public about state and local history and encouraging and sponsoring *existing and future historical societies*." *Id.* at 1057–58 (emphasis added); *see also id.* at 1056–57 (noting that the "Foundation's stated purpose includes . . . encouraging and sponsoring *existing and future historical societies* relevant to the [Town of Islip] area's heritage and traditions" (emphasis added)). The *Sagtikos Manor* opinion noted that the chartering document did "not name the Historical Society as a beneficiary, nor does it name any beneficiary," *id.* at 1058. The opinion made only a brief reference to the will, stating that it "did not mention the Historical Society," *id.* Given (1) the opinion's prior instruction that a special interest is to be determined by looking to

5

the chartering documents, and (2) its focus on the precise language of that document—which showed that there was no sharply defined and limited class of potential beneficiaries—we do not interpret its brief reference to the silence of the will as implying either that mention of the Historical Society in the will would have satisfied the special-interest standard, or that the special-interest inquiry required the court to consult the will in addition to the chartering documents.

Second, to the extent that the will served as a chartering document in that case, it was because the testator himself established the defendant foundation and that action sought "a judgment declaring the intent of the grantor." *Id*. at 1056. Here, by contrast, the Academy makes no allegation that the donors played any role in establishing the Foundation. Because the donors did not create the Foundation, their communications are not relevant to understanding the purpose for which the Foundation was created. *Cf. Testamentary Trust*, BLACK'S LAW DICTIONARY (11th ed. 2019) (explaining that a testamentary trust "is created by a will"); *see also In re Hunter*, 4 N.Y.3d 260, 265 (2005) (describing establishment of trusts by will).

Notwithstanding this rule articulated by the Second Department, the Academy argues that case authority from this Court, as well as from other New York courts, suggests that we should also consider other factors beyond the Foundation's chartering documents. Specifically, the Academy contends that we should consider the Foundation's Internal Revenue Service Form 1023, one of its board resolutions, the fact that it included Academy officials on its board, its history of supporting the Academy, and the intentions of its donors. However, the Academy's reliance on these other cases to support its position is misplaced.

In *Hadassah Academic College v. Hadassah, the Women's Zionist Organization of America, Inc.*, 795 F. App'x 1 (2d Cir. 2020) (summary order), we affirmed dismissal of an action

by a potential beneficiary for lack of special-interest standing. In our summary order, we noted that the plaintiff "point[ed] only to gift agreements and wills in which donors or testators expressed a desire that the funds directed to [defendant] eventually flow to [plaintiff]," and accordingly addressed why those documents were insufficient to satisfy the special-interest exception. *Id.* at 3. In *Hadassah*, there was no charter or certificate of incorporation in the record.[4] In concluding that the documents upon which plaintiff relied did not support standing, we did not hold that such documents, if they differed from the chartering documents, would control. *See id.* Thus, contrary to the Academy's suggestion, our summary order in *Hadassah* cannot be read as deviating from the framework articulated by the Second Department in *Sagtikos Manor*.

The other New York cases the Academy relies on, *In re Trustco Bank*, 33 Misc.3d 745 (Sur. Ct. Schenectady Cnty. 2011), and *Swift v. N.Y. Medical College*, No. 10717-04, 2006 WL 6610700 (Sup. Ct. Westchester Cnty. Nov. 15, 2006), do not change our understanding of the *Sagtikos Manor* rule. As a threshold matter, we note that both cases were decided by New York's lower courts before *Sagtikos Manor*. Moreover, the circumstances in both *Trustco* and *Swift* are clearly distinguishable from the instant case. In *Trustco*, "there [wa]s a named beneficiary, St. Clare's [Hospital]," of the trust in question, and the Surrogate's Court considered evidence of an external agreement between St. Clare's Hospital and Ellis Hospital only because St. Clare's

---

[4] As the district court in that case noted, neither party had submitted the defendant's chartering documents, requiring the court to rely on the plaintiff's own complaint characterizing the defendant's mission as broadly supporting "women's health and well-being, . . . Israel, and . . . Jewish values and continuity." *Hadassah Acad. Coll. v. Hadassah, the Women's Zionist Org. of Am., Inc.*, No. 18 Civ. 2446 (AT), 2018 WL 8139301, at *2 n.1, *3 (S.D.N.Y. Nov. 1, 2018); *see also Hadassah Acad. Coll. v. Hadassah, the Women's Zionist Org. of Am., Inc.*, No. 18 Civ. 2446 (AT), 2019 WL 1897668, at *3 (S.D.N.Y Apr, 29, 2019) (denying motion for reconsideration where plaintiff "cite[d] no support for th[e] proposition" that the court "should have considered the wills, deeds and other gift instruments or agreements, and not the charter . . . , to be the foundational documents" (internal quotation marks and citation omitted)).

Hospital had closed, and the agreement demonstrated that Ellis Hospital "ha[d] acquired St. Clare's Hospital's assets and ha[d] assumed its hospital services." *Trustco*, 3 Misc.3d at 747, 752, 754. The asset transfer agreement was therefore considered, not to determine whether a beneficiary of the trust had a special interest sufficient to confer standing, but rather whether St. Clare's Hospital had conveyed that interest to Ellis Hospital. *Id*. at 753. In *Swift*, the court found standing because it was "undisputed" that the donations at issue "were to be used specifically for plaintiff's medical research project" and were "earmarked" as such by the defendant, *Swift*, 2006 WL 6610700 at *2, neither of which is the case here. As the Foundation points out, its certificate of incorporation and bylaws provide its board with "absolute discretion to distribute its charitable funds to appropriate charitable recipients as it decides," and "[a]ll contributions are accepted solely upon [that] condition," with "earmarking" explicitly "prohibited."[5] Appellee's Br. at 2, 11; *see also* Joint App'x at 44–46, 103–04.

Finally, we note that, although the Academy suggests that New York law allows us to consider the Foundation's Form 1023 on the question of standing, the trial court's decision in *Sagtikos Manor*, which specifically relied on the charitable entity's Form 1023 application in finding special-interest standing, was reversed by the Second Department. *Sagtikos Manor Hist.*

---

[5] The anti-earmarking provision is no accident. As *amici* note, donations to the Foundation are tax-deductible only because the Foundation has "full control of the donated funds, and discretion as to their use," Rev. Rul. 66-79, 1966-1 C.B. 48, and they are not "earmarked in any manner," Rev. Rul. 63-252, 1963-2 C.B. 101; *see also* Appellant's Br. at 7 (explaining that "for tax reasons the Foundation's bylaws and certificate of incorporation did not specifically name the Academy as a beneficiary"). Although the Academy alleges that the funds here were accepted *with* earmarks in potential violation of both the Foundation's bylaws and its tax status, the Foundation disputes that contention and the Academy provides no authority under New York law for us to consider the gift agreements purportedly containing those earmarks on the standing issue to override the explicit language in the certificate of incorporation and bylaws.

8

*Soc., Inc. v. The Robert David Lion Gardiner Found., Inc.*, No. 16632/2012, 2013 WL 1290455, at \*2–4 (Sup. Ct. Suffolk Cnty. Mar. 20, 2013) (noting that "[s]ignificantly," the entity's applications for tax exemptions specifically named the plaintiff and the historical site where it operated), *rev'd* 127 A.D.3d at 1058. In reversing and specifying that the process by which "[t]his 'special interest' is found" is "by looking to the trust's chartering documents," 127 A.D.3d at 1057, the Second Department necessarily rejected reliance on Form 1023 to establish standing, even when it explicitly names a plaintiff beneficiary.

The Academy alternatively argues that, if it is denied special-interest beneficiary standing, then it has standing as either a donor to the Foundation or its co-trustee. We disagree. The Academy's purported status as a donor is based on its argument that certain funds contributed to the Foundation were, in actuality, "gifts to the Academy, [which] . . . assigned them to the Foundation." Appellant's Br. at 36. To be sure, New York law "accord[s] standing to donors to enforce the terms of their own gifts concurrent with the Attorney General's standing to enforce such gifts on behalf of the beneficiaries thereof." *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 281 A.D.2d 127, 140 (1st Dep't 2001). However, as alleged in the amended complaint, the Academy merely requested that certain private donors pay funds intended for the Academy to the Foundation instead. *See, e.g.*, Joint App'x at 24 ("In a letter . . . , the Baroness de Rothschild clarified . . . that the assets held by [the Batsheva de Rothschild Fund] would be transferred to [the Foundation] at the request of the Academy."). The Academy itself did not transfer such donations to the Foundation.

Moreover, as the Foundation and *amici* point out, arrangements like the one here—in which donors fund an American charitable entity that in turn issues grants to foreign non-profit entities—

9

are prevalent due to their tax advantages for the donors. *See, e.g.*, *Hadassah*, 795 F. App'x at 2 ("[Plaintiff Hadassah Academic College] has for many years been a beneficiary of charitable funds transmitted to it by [defendant], and funds donated to [defendant] are often earmarked by donors for later distribution to [plaintiff]."). Despite the prevalence of such relationships, however, the Academy has pointed to no case in which a New York court has held that the foreign recipient is a "donor" to the American charitable entity, nor have we identified one. Thus, the district court properly concluded that the Academy did not have standing as a donor.

The Academy's remaining argument, that it is a "co-trustee" of the Foundation, is similarly unavailing. Under New York law, although a trust may be implied by the bequeath of certain gifts establishing an endowment, *Lefkowitz v. Cornell Univ.*, 35 A.D.2d 166, 171 (4th Dep't 1970), *aff'd*, 28 N.Y.2d 876 (1971), the grantee institution "hold[s] full ownership rights in any [gifted] assets," N.Y. NOT-FOR-PROFIT CORP. LAW § 513(a). Here, the Academy has failed to allege that it was involved in any gift to the Foundation containing a clear statement of intent in the donative instrument that the gift be held in trust.[6] Even assuming, *arguendo*, that the Foundation, as a charitable corporation, is also a charitable trust, the Academy does not allege sufficient facts to conclude that it is an overall trustee of the Foundation. That assertion is primarily based on the fact that it was designated by the Foundation "to act as a trustee in the management of" a particular bank account and a particular securities account of the Foundation at the Israel Discount Bank in

---

[6] Contrary to the Academy's representation, the Foundation did not "argue[] that it is a 'trustee of a charitable trust'" in the district court. Appellant's Reply Br. at 26 (quoting the district court opinion). In fact, the Foundation *contested* that the Academy "was involved in any gift to [the Foundation] in which there was a clear statement of intent in the donative instrument that the gift be held in trust," D. Ct. Dkt. No. 33 at 9 n.10 (memorandum of law in support of motion to dismiss); *see also id.* at 8 (specifically referring to the Foundation as a "not-for-profit corporation" rather than a "charitable trust").

10

Jerusalem. Joint App'x at 140. Despite having nominal co-trustee status over these accounts, the Academy had limited authority over them: its representatives were only allowed to serve as authorized signatories of those accounts and were "authorized to instruct the Israel Discount Bank to execute financial transactions *within and between the aforementioned [bank and securities] accounts only*." Joint App'x at 140 (emphasis added). Moreover, as the complaint itself alleges, even this limited status was revoked more than two years before this action was commenced. Joint App'x at 12. Finally, the Academy's argument that we should consider *it* a trustee based on the fact that the Foundation's board has included senior officers of the Academy is unavailing: the inclusion of certain individual officers on the Foundation's board is not the equivalent of naming the Academy itself as a co-trustee. In short, based on this record, the Academy failed to establish that it is a co-trustee of the Foundation, and the district court correctly found no standing on that ground.

*          *          *

We have considered the Academy's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.[7]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[7] To the extent that the Academy requests that this Court deem that the dismissal be without prejudice, that request is denied.